# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KRISTIE M. EIDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-20-561-AMG |
| ) | |
| KILOLO KIJAKAZI, ) | |
| ACTING COMMISSIONER OF ) | |
| SOCIAL SECURITY,[1] ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kristie M. Eidson ("Plaintiff"), brings this action for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for disability insurance benefits ("DIB"). (Doc. 1). The Commissioner has answered the Complaint and filed the Administrative Record ("AR"). (Docs. 16, 19). The parties have briefed their respective positions (Docs. 22, 26).[2] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 18, 21). Based on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

---

[1] Kilolo Kijakazi is the Acting Commissioner of the Social Security Administration and is substituted as the proper Defendant. *See* Fed. R. Civ. P. 25(d).

[2] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

## I.      The Disability Standard and Standard of Review

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. § 404.1521; *see also id.* §§ 404.1502(a), 404.1513(a). A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment

or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[3] whether the impairment prevents the claimant from continuing his past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the Plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of her age, education, and work experience." *Id*. "The claimant is entitled to disability benefits only if he is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct.

---

[3] RFC is "the most [a claimant] can do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1).

1148, 1154 (2019) (internal quotation marks and citation omitted).  When supported by substantial evidence, an ALJ's factual findings "'shall be conclusive.'"  *Id.*  Under this deferential standard, the court "defers to the presiding ALJ, who has seen the hearing up close."  *Id.* at 1157.  A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  While the Court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).  Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**II.       Procedural History**

Plaintiff filed an application for DIB on August 22, 2017, alleging a disability onset date of August 1, 2017.  (AR, at 193-94).  The SSA denied the application initially and on reconsideration.  (*Id.* at 107-11, 113-19).  An administrative hearing was then held on January 31, 2019.  (*Id.* at 35-64).  The Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled.  (*Id.* at 17-29).  The Appeals Council denied Plaintiff's request for review.  (*Id.* at 1-6).  Thus, the ALJ's decision is the final decision of the Commissioner.  *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

## III. The Administrative Decision

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 2017, the alleged onset date. (AR, at 20). At Step Two, the ALJ determined Plaintiff suffers from the severe impairments of inflammatory polyarthropathy, fibromyalgia, and major depressive disorder (recurrent, moderate).[4] (*Id*.) At Step Three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 21). The ALJ then determined that Plaintiff had the RFC to perform light work except that she could only:

> occasionally climb ramps and stairs, balance, and stoop; never kneel, crouch, crawl, and climb ropes, ladders, or scaffolds; must avoid exposure to workplace hazards, such as dangerous moving machinery and unprotected heights; understand, remember, and carry out simple routine instructions; make only simple work related decisions; deal with only occasional changes in work processes and environment; have no interaction with the general public; have only incidental, superficial work-related type interaction with co-workers and supervisors, defined as brief, succinct, cursory, concise communication relevant to the task being performed; cannot tolerate work traditionally known or classified as "teamwork" type jobs, wherein the employee is working in conjunction with, or in tandem with, one or more co-workers on the very same job task or duty; and cannot tolerate strict production or performance quotas (in that the employee must complete $1/16^{th}$ of their day's work every half hour), but that the employee can vary the pace of work (slow down and then speed up), albeit that all assigned work is completed by the end of the day or workweek, whichever is applicable.

---

[4] The ALJ also found Plaintiff's headaches and urinary tract infection were non-severe impairments. (AR, at 14).

(*Id.* at 23). At Step Four, the ALJ found Plaintiff could not perform any past relevant work. (*Id.* at 27). At Step Five, the ALJ relied on the testimony of a vocational expert ("VE") and found that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as bench hand, toy stuffer, touchup screener (circuit boards), document preparer, and table worker. (*Id.* at 28). Therefore, the ALJ concluded that Plaintiff was not disabled for purposes of the SSA. (*Id.* at 29).

## IV. Issues Presented for Judicial Review

Plaintiff contends the ALJ erred by improperly considering Plaintiff's symptoms (Doc. 22, at 7-12) and a medical source's opinion (*id.* at 12-14), specifically with regard to Plaintiff's alleged need to elevate her legs. The Commissioner contends the ALJ's symptom analysis was reasonable and that Plaintiff's argument amounts to a request to reweigh the evidence. (Doc. 26, at 8-13).

## V. The ALJ Properly Considered Plaintiff's Symptoms and the Medical Source's Opinion.

### A. Legal Standards For Considering a Claimant's Symptoms

When evaluating a claimant's symptoms,[5] an ALJ must consider: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication, the claimant has received; (6) any measures other than treatment an individual uses or has used to relieve

---

[5] The SSA defines "symptom" as "the individual's own description or statement of his or her physical or mental impairment(s)." SSR 16-3p, 2017 WL 5180304, at *2.

pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions.  *See* Social Security Ruling ("SSR") 16-3p: <u>Titles II & XVI: Evaluation of Symptoms in Disability Claims</u>, 2017 WL 5180304, at *7-8 (S.S.A. Oct. 25, 2017).

The ALJ must determine whether the claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record."  *Id.* at *7.[6]  If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities."  *Id*.  Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence."  *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008).  Provided the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence."  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (quotation marks omitted).  "[C]ommon sense, not technical perfection, is [the reviewing court's] guide."  *Id*.  Furthermore, the ALJ is entitled

---

[6] "This evaluation, previously termed the 'credibility' analysis, is now termed the 'consistency' analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a 'consistency' and 'credibility' analysis. *See Brownrigg v. Berryhill*, 688 F. Appx. 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority." *Tina G.B., v. Kijakazi*, 2021 WL 3617449, at *3, n.2 (N.D. Okla. Aug. 16, 2021). *See also Olson v. Comm'r, SSA*, 843 F. App'x 93, 97 n.3 (10th Cir. 2021) ("The Commissioner no longer uses the term 'credibility' in evaluating a claimant's statements.  The analysis, however, remains substantially the same.") (internal citation omitted).

to resolve evidentiary conflicts. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016).

### B. The ALJ's Symptom Analysis Is Supported By Substantial Evidence.

Plaintiff argues the ALJ's symptom analysis is not supported by substantial evidence because the ALJ did not properly consider Plaintiff's claimed need to elevate her legs. (Doc. 22, at 7-14). Relevant to this contention, Plaintiff testified that on a typical day she either sleeps, lays on her chair, or tries to get laundry done or supper prepared. (AR, at 44). She asserted she can only stand for three or four minutes before her feet fall asleep, at which point she has to "start moving [her] feet around and walk around a little bit." (*Id.* at 45). She further noted that when her leg fell asleep at a previous job, she had to "hold one leg up" and needed to sit down. (*Id.*) She also testified she was exhausted and her legs would swell and tingle while working. (*Id.*) Plaintiff also complained of pain in her knees and legs due to fibromyalgia and asserted she has to lay down due to migraines. (*Id.* at 48-49).

Although the ALJ did not explicitly mention Plaintiff's allegation that she needed to elevate her legs, he summarized Plaintiff's testimony regarding the physical symptoms underlying this claim, as follows: "She experiences pain in [her] hips, knees, and back and she needs to lay down. She can stand for three to four minutes before her feet fall asleep. She sweats, tingles and experiences pain in her legs, back, knees, ankles, and feet." (*Id.* at 24). The ALJ then found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely

consistent with the medical evidence and other evidence in the record." (*Id.*) The ALJ noted evidence of Plaintiff's symptoms supporting the limitations contained in the RFC – such as abnormal imaging, balance issues, lumbosacral spine tenderness, muscle spasm, and 18 out of 18 fibromyalgia trigger points. (*Id.*) But the ALJ also cited specific medical evidence from multiple practitioners suggesting Plaintiff's limitations were not as severe as she suggested – including normal physical examination findings showing a full range of motion of extremities, normal gait, normal straight leg tests, and lack of joint swelling. (*Id.*) The ALJ also referenced Plaintiff's conservative treatment, the fact that pain medication provided her some relief, and her activities of daily living. (*Id.* at 24-25).

Plaintiff argues the ALJ "never acknowledged [her] allegations of leg elevation and never explained why these statements were not included in the RFC." (Doc. 22, at 9). Although the ALJ did not reference Plaintiff's statement that she had to "hold one leg up" at a previous job when her feet fell asleep, "an ALJ is not required to quote each of a claimant's statements about each of her impairments in order to be recognized as acknowledging them." *Monique M. v. Saul*, 2020 WL 5819659, at *11 (D. Kan. Sept. 30, 2020); *see also Sanders v. Colvin*, 2015 WL 6034465, at *3 (W.D. Okla. Sept. 29, 2015) ("The ALJ was not required to expressly discuss every symptom-related allegation raised by Plaintiff in reaching the RFC determination."), *adopted*, 2015 WL 6110557 (W.D. Okla. Oct. 15, 2015). Here, the ALJ explicitly considered Plaintiff's testimony that her legs fell asleep and also noted that she had to lay down. Additionally, the ALJ stated he "considered all symptoms." (AR, at 23). "Where, as here, the ALJ indicates he has considered all the evidence our practice is to take the ALJ at [his] word." *Wall*, 561 F.3d at 1070 (internal

9

quotation marks omitted); *see also Bales v. Colvin*, 576 F. App'x 792, 799 (10th Cir. 2014) ("Here, the ALJ thoroughly discussed the medical evidence, and there is no indication that, despite not expressly mentioning [the claimant's] other medical problems, the ALJ did not take them into account."). Thus, the Court finds the ALJ properly considered Plaintiff's testimony regarding her leg symptoms.

Plaintiff also asserts the ALJ's summary of evidence does not explain "how the evidence supported or detracted from [her] allegations of leg elevation." (Doc. 22, at 11). In support of this proposition, Plaintiff cites SSR 16-3p, which states the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10. But the ALJ is not required to make such a direct correlation between every alleged symptom and the evidence. *See Bales*, 576 F. App'x at 800 (10th Cir. 2014) ("An ALJ is not required to identif[y] any specific incredible statements, so long as the ALJ indicat[es] to what extent [s]he credited what [the claimant] said when determining the limiting effect of [the claimant's] symptoms.") (internal quotation marks omitted); *Monique M.*, 2020 WL 5819659, at *12 (finding SSR 16-3p does not require the ALJ to explicitly "address each allegation of a limitation, state whether he found that allegation consistent or inconsistent with the evidence, and explain how each statement factored into his conclusion"). The Court finds the ALJ's discussion satisfied SSR 16-3p's requirements because he provided specific reasons for his consideration of Plaintiff's symptoms in formulating the RFC. (AR, at 24-25).

Plaintiff also contends her alleged limitation is supported by the medical record. First, Plaintiff's notes that Dr. Robert Balogh, M.D., observed that her ability to toe and heel walk was compromised by poor balance bilaterally and 18/18 fibromyalgia trigger points. (Doc. 22, at 9 (citing AR, at 373)). She also notes that Jamie Silcock, Advanced Practice Registered Nurse, Certified Family Nurse Practitioner (APRN, FNP-C), opined that Plaintiff would need to elevate her legs above heart level for 20% of the workday due to imbalance, fatigue, weakness, and dizziness. (*Id.* (citing AR, at 367)). Plaintiff further contends that the ALJ's reliance on findings of normal gait and other normal examination findings are not sufficient because Plaintiff's symptoms were intermittent. (*Id.* at 11). Finally, Plaintiff asserts the daily activities identified by the ALJ are not "inconsistent with the need to elevate the legs periodically throughout the day." (*Id.* at 12). But, these arguments amount to no more than a request to reweigh the evidence, which is not this Court's role. *Deherrera v. Comm'r, SSA*, 848 F. App'x 806, 810 (10th Cir. 2021). This Court must defer to the ALJ, who was entitled to resolve the evidentiary conflicts. *Allman*, 813 F.3d at 1333.

For the reasons stated above, the ALJ did not err in his analysis of Plaintiff's symptoms, specifically those related to her contention that she had to elevate her legs.

### C. The ALJ Properly Considered Ms. Silcock's Opinions.

Plaintiff contends the ALJ erred in considering Ms. Silcock's opinions because the ALJ did not explain why normal objective findings in the record were more persuasive than abnormal findings and because he did not specifically address Ms. Silcock's opinion

that Plaintiff would need to elevate her legs above heart level 20% of the day. (Doc. 22, at 12-14). For the reasons set forth below, the Court disagrees.

"A medical opinion is a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s)" and whether a claimant has a limitation or restriction in the ability to perform physical, mental, or other demands of work or to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). An ALJ considers medical opinions using five factors: (1) how much the opinion is supported by objective medical evidence and explanation; (2) the consistency of the opinion with evidence from other sources in the claim; (3) the medical source's relationship with the claimant; (4) the specialization of the medical source; and (5) other factors that tend to support or contradict a medical opinion. *Id.* § 404.1520c(a), (c)(1)-(5). The ALJ must articulate how persuasive he or she finds a medical opinion. *Id.* § 404.1520c(b). In doing so, the ALJ is required to explain how he or she "considered the supportability and consistency factors for a medical source's medical opinions." *Id.* § 404.1520c(b)(2). But, the ALJ is not required to explain how he or she considered the remaining factors. *Id.* Additionally, when a medical source provides multiple medical opinions, the ALJ must only articulate how he or she "considered the medical opinions . . . from that medical source together in a single analysis." *Id.* § 404.1520c(b)(1); *see also id.* ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.").

The ALJ considered Ms. Silcock's opinion as follows:

> Jamie Silcock, APRN, opined that the claimant could frequently lift/carry less than ten pounds, rarely lift/carry ten to 20 pounds, and never lift/carry 50 pounds, occasionally twist, balance, and crouch, and rarely stoop, crawl and climb, frequently finger and occasionally reach, handle, and feel, sit and stand for 30 minutes at one time, and sit and stand for two hours in an eight-hour workday, would be off-task 25% of the workday and would miss more than four days of work per month. **This opinion is not supported by Ms. Silcock's examination findings or the [sic] consistent with the remainder of the record,** which reflected diagnosis of inflammatory polyarthropathy and fibromyalgia, 18 of 18 positive trigger points, positive muscle spasm, and cervical spine tenderness, but additional findings noting normal range of motion of the back, neck, hips, knees, ankles, shoulders, elbows, wrists, and fingers, negative straight leg raise tests bilaterally in seated and supine positions, equal grip and toe strength bilaterally and normal deep tendon reflexes and normal gait. **Accordingly, the undersigned does not find the opinion persuasive.**

(AR, at 26 (internal citation omitted) (emphasis added)).

The ALJ performed the required analysis, articulating that Ms. Silcock's opinion was not persuasive because it was not supported by examination findings. Indeed, there are no treatment notes from Ms. Silcock in the record. (*See* AR, 306-439). Moreover, the ALJ sufficiently explained that Ms. Silcock's opinion was not consistent with the record evidence, due to the presence of numerous normal examination findings, even when juxtaposed to Plaintiff's diagnoses and some abnormal findings. The Court finds the ALJ supported the consistency determination with substantial evidence and was entitled to resolve the evidentiary conflicts.

Plaintiff also argues the ALJ never acknowledged the portion of Ms. Silcock's opinion that Plaintiff needed to elevate her legs above heart level for 20% of the workday due to imbalance, fatigue, weakness, and dizziness (Doc. 22, at 12), and that the ALJ erred by not specifically "explain[ing] how [the] normal findings detract from the conclusion

13

that [Plaintiff] required the need to elevate her legs 20% of the workday" (*id*. at 13).  The Court does not find the ALJ committed error.  *See Calloway v. Kijikazi*, 2021 WL 5227068, at *6 (M.D. Ala. Nov. 8, 2021) ("Contrary to [Plaintiff's] assertion, any failure by the ALJ to address each and every limitation on Dr. Amason's Physical Residual Functional Capacity Assessment does not constitute reversible error.  The amended regulations do not require an ALJ to articulate how she or he considered each opinion or finding from a medical source individually."); *Tammi F. v. Saul*, 2020 WL 7122426, at *6 (D. Kan. Dec. 4, 2020) (rejecting Plaintiff's argument that "the ALJ was required to provide explanation for discounting <u>every individual limitation</u> in [a medical] opinion" because the argument was "planted upon case law based on interpretation of the former regulations' requirement").  Thus, the Court finds no error in the ALJ's consideration of Ms. Silcock's opinions.

## VI. Conclusion

For the reasons discussed above, the Court **AFFIRMS** the decision of the Commissioner.

ENTERED this 23rd day of November, 2021.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE

14